UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| MARCELLO CELENTANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ELI GLOBAL, LLC and ECL | ) |
| GROUP, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

## COUNT I

Plaintiff complains against defendants as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §1332, in that this is a suit between citizens of different States and the amount in controversy exceeds the jurisdictional amount of $75,000 exclusive of interest and costs. The claims of this suit arise under North Carolina law. Plaintiff Marcello Celentano is a citizen of Illinois who resides in Naperville, Illinois. Defendants Eli Global, LLC and ECL Group, LLC are citizens of North Carolina. Eli Global LLC's state of incorporation is Delaware; ECL Group's is North Carolina. Both limited liability companies' headquarters and principal place of business are in Durham, North Carolina. To the best of plaintiff's current information, neither defendant has an equity shareholder who is a citizen of Illinois.

2. Venue is proper in this District. Both claims in this lawsuit arise under or are related to an Employment Confidentiality, Non-Solicitation and Non-Competition Agreement (henceforth "the Agreement") between Celentano and defendants, attached as Exhibit A. Section 5.12 of the Agreement provides:

> Executive acknowledges that Confidential Information is kept in the State of North Carolina and such jurisdiction and venue is materially related to this Agreement. The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in North Carolina, over any suit, action or proceeding arising out of or relating to this Agreement.

## PARTIES

3. Eli Global LLC wholly owns ECL LLC, a corporation which owns a number of eye care practices. Plaintiff Celentano is an experienced businessman who, as described below, was employed by defendants as President of the Provider Management Division of ECL LLC and other businesses owned by Eli Global LLC. The employment relationship was embodied in the Agreement, to which both Eli Global LLC and ECL LLC are parties.

## CLAIM FOR RELIEF

4. Celentano was hired as CEO by Claris Vision LLC, a private-equity-owned business consisting of four ophthalmology surgical practices in Massachusetts and Rhode Island. In late 2017, as a result of a merger transaction, defendants employed Celentano. He and defendants negotiated the Agreement with him and agreed on all terms and on the text that appears as Exhibit A. He signed that Agreement on or about December 20, 2017 and returned it to defendants. Defendants are believed to have signed the Agreement but did not return a signed copy to him prior to his termination described below. In the meantime, until the breach

described below, they observed all terms of the Agreement.  Following his employment by defendants, Celentano was based in Chicago and reported to an executive named Mike Gallup.

5. Pursuant to the Agreement, Celentano was to "have such duties and perform such services as are customarily associated with [his] positions and such additional duties and services as may lawfully be assigned or delegated" to him."  Under §1.3 of the Agreement, he was to be compensated by (a) a base annual salary in the amount of $300,000, paid twice a month; and (b) a bonus of up to 50% of his then-current Annual Salary based on targets and performance assessments as determined by defendants.

6. Section 2.1 of the Agreement governs termination.  It allowed the Employer to terminate Celentano "immediately upon written notice by Employer to [Celentano] specifying Cause" (§2.1(c)), or "upon at least thirty (30) days written notice to [Celentano] without Cause (§2.1(d)).  "Cause" is defined in §5.1 of the Agreement as follows:

> "Cause" shall mean: (i) Executive has been convicted of, pled guilty to, or pled no contest to any felony or any misdemeanor involving fraud, theft, dishonesty or embezzlement; (ii) Executive has materially breached this Agreement and has failed to cure such breach within thirty business days of written notice; (iii) Executive breached a fiduciary duty owed to Employer; (iv) Executive exercised gross negligence or willful misconduct in the performance of Executive's duties with Employer; or (v) Executive competed with Employer in violation of the terms of this Agreement or disclosed or used any Confidential Information not for the purposes set forth in this Agreement.

7. Section 2.4(c) of the Agreement provides:

If the employment is terminated by Employer without Cause or by Executive for Good Reason, Employer shall (i) pay Executive all Annual Salary accrued and unpaid as of the date of termination; (ii) pay Executive's Annual Salary (in the amount as it existed immediately prior to termination) for a period of 12 months following the date of termination in accordance with Employer's customary payroll practices and subject to applicable withholding; (iii) pay Executive an amount equal to the Annual Bonus for the year in which his employment terminated calculated as though Executive fully achieved all performance metrics

for such Annual Bonus plus any Annual Bonus that had been calculated and not yet paid (such bonuses to be paid in a lump sum on or before the 30th day after such termination), and (iv) in the event Executive elects to receive benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Company shall reimburse Executive for COBRA premiums paid by Executive for the shorter of (a) 6 months commencing the day after the date of the termination of the Executive's employment or (ii) until Executive becomes eligible to receive health insurance benefits from any subsequent employer of Executive; provided this provision shall not cause Employer to continue health insurance for Executive if otherwise terminated.

8. On February 22, 2018, Celentano received the following email from Mike Gallup:

We have received allegations that you have engaged or supported misconduct at work. We intend to fully and thoroughly investigate these allegations. Until our investigation is complete, please be advised that, effectively immediately, you are being placed on paid leave. In addition to the foregoing, please note the following which also apply pending the outcome of our investigation. You are prohibited from entering Claris or related company premises; You are prohibited from accessing Claris or related company email and/or any other Claris or related company systems; We are treating this investigation as confidential and we advise that you do the same. Should we determine that you are in violation of any of the foregoing requirements during the pendency of our investigation, the same will be grounds for immediate termination of your employment. We will contact you in the near future. Thank you for your cooperation. Please direct all questions to Brandon whose contact info is below. Brandon Richards, Legal & HR, M: 724-553-6208. Mike Gallup, CEO Mobile: 678458-1222.

9. On February 27, 2018, Brandon Richards and one of his direct reports interviewed Celentano. Their questions mainly concerned a Human Resources Employee reporting to Celentano named Jen Yentz. Celentano himself was not accused in that interview or at any other time while employed by defendants of conducting himself abusively toward anyone.

10. On the following day, February 28, 2018, Richards sent a text message to Celentano asking him to participate in a call with him and Mike Gallup that afternoon at 4:30 p.m. Eastern Standard Time. Before that call could take place, Richards sent another text message which was intended for Mike Gallup but was mistakenly sent to Celentano. That text read:

> Suggestions for what you should stick to on the call: Effective immediately, your employment is terminated for both cause and poor performance. In particular, financial performance and failure to maintain control of the working environment in the organization. You don't need to read verbatim, but would keep it short. Will call you about 5 mins ahead.

11. Richards later called Celentano without Gallup's participation and said that this second text had been intended for Mike Gallup. Richards said that he (Richards) was officially terminating Celentano and asked that he mail his company property, which Celentano said he would do the following week. Celentano asked about his termination date and his earned bonus for the preceding year under the contract he had had with Claris Vision LLC, an obligation which had been assumed by another entity controlled by defendants as a result of the merger in late 2017. Richards said he would get back to him on those questions. Richards then sent Celentano a text saying that "we are good making your termination date effective tomorrow. Mike is looking into the bonus and will circle back shortly."

12. This was the last written communication Celentano received on this matter. He did not receive any communication (other than the mistakenly sent text, which was not addressed to him and was sent before his termination) saying he was terminated for Cause or specifying what that Cause might have been.

13. Celentano committed no Cause for termination. He has never been convicted of, pled guilty to, or pled no contest to any felony or any misdemeanor involving fraud, theft, dishonesty or embezzlement. He committed no material breach of the Agreement and in any event was given no chance to cure any alleged material breach of the Agreement within 30 days, as required by the Agreement. He breached no fiduciary duty owed to defendants. He did not exercise gross negligence or willful

misconduct in the performance of his duties.  He did not compete with defendants or disclose or use any Confidential Information.

14. By the above conduct, defendants violated the Agreement by terminating Celentano when no Cause for termination existed and without providing him the payments required in the event of a termination without Cause.

15. By the above conduct, Celentano has been damaged in the amount of $450,000, consisting of the $300,000 base salary payment and the $150,000 bonus payment required in the event of a termination without Cause.

WHEREFORE, Celentano requests that this Court award him damages in the sum of $450,000, prejudgment interest on that liquidated amount, the costs of this action, and such other relief as the Court deems just.

## **COUNT II**

16. Celentano realleges paragraph 1 through 15.

17. By the above acts, defendants violated the North Carolina Wage and Hour Law ("the Law") by failing to pay his severance due under the Agreement.  Under N.C.G.S. §95.25.7, "Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee. Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs." Under  N.C.G.S. §95.25.2(16), the term "wage" in §95.25.7 includes severance pay.

WHEREFORE, Celentano requests that this Court award him (1) the severance pay of $450,000 due under the Agreement; (2) interest on that amount at 8% calculated from the date payment of the severance was due under the Law, pursuant to N.C.G.S. §§95.25.22 and 24.1; (3)

liquidated damages in the additional amount of $450,000 pursuant to N.C.G.S. §95.25.22(a1);

and (4) the reasonable attorney's fees and expenses incurred in pursuing this claim, pursuant to

N.C.G.S. §95.25.22(d).

Respectfully submitted this the 29th day of March, 2018.

                                      VAN WINKLE, BUCK, WALL, STARNES
                                      and DAVIS, P.A.

                                      By:/s/Stephen J. Grabenstein
                                      Stephen J. Grabenstein
                                      Local Attorney for Plaintiff
                                      11 North Market Street
                                      Asheville, NC  28801
                                      Telephone: (828) 258-2991
                                      Fax: (828) 257-2773
                                      N.C. Bar No.: 18848
                                      E-mail:  sgrabenstein@vwlawfirm.com


George F. Galland, Jr. (*pending pro hac vice*)
Miner, Barnhill & Galland, P.C.
325 N. LaSalle Street, Suite 325
Chicago, IL 60654
(312) 751-1170