# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:18-CV-00080-MR-DSC

| | |
|---|---|
| **MARCELLO CELENTANO,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| v. | ) |
| | ) |
| **ELI GLOBAL LLC AND ECL GROUP LLC,** | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on "Defendants' Rule 12(b)(6) Motion to Dismiss and Alternative Motion to Transfer Division," Doc. 10, as well as the parties' briefs and exhibits. Docs. 11, 12, 16 and 24.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) on November 7, 2018, and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion be denied as discussed below.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case involves an Employment Confidentiality, Non-Solicitation and Non-Compete Agreement between Plaintiff and Defendants. Accepting the allegations of the Complaint as true, Plaintiff Celentano was hired as CEO by Claris Vision LLC, a private equity owned business consisting of four ophthalmology surgical practices in New England. Defendant Eli Global LLC wholly owns ECL Group LLC. ECL Group LLC owns several eye care practices. In late 2017,

as a result of a merger, Defendants employed Plaintiff. He and Defendants entered into an Employment Agreement attached as Exhibit A to Plaintiff's Complaint. Doc. 1. The parties to the Agreement are Plaintiff, Eli Global LLC, and its subsidiary ECL Group LLC. The Agreement designates the "Employer" as "ECL and other entities" Id. at ¶A. The Agreement states that "Executive [Plaintiff] will be employed by Employer as President, Provider Management Division..." Id. at ¶1.2.

Plaintiff signed the Agreement on or about December 20, 2017 and returned it to Defendants. Plaintiff alleges that "Defendants are believed to have signed the Agreement but did not return a signed copy to him…." Id. at ¶4. Following his employment by Defendants, Plaintiff was based in Chicago and reported to Mike Gallup. Up until his termination, Defendants observed all terms of the Agreement.

The Agreement allows Plaintiff to be terminated "immediately upon written notice by Employer to [Plaintiff] specifying Cause" or "upon at least thirty (30) days written notice to [Plaintiff] without Cause." Id. at ¶2.1. If "Employer" terminates Plaintiff without Cause, it must pay him, among other benefits, his annual salary (as it stood immediately prior to termination) for twelve months plus his annual bonus for the year in which his employment was terminated. Id. at ¶2.4(c). The Agreement is construed under North Carolina law. The Agreement also contains a Jurisdiction clause that states "parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in North Carolina, over any suit, action or proceeding arising out of or relating to this Agreement." Id. at ¶5.12.

Plaintiff was fired on March 1, 2018. He alleges that he committed none of the acts defined as Cause for termination and is thus entitled to payment under the Agreement. On March 29, 2019,

Plaintiff filed his Complaint alleging breach of contract and violation of the North Carolina Wage and Hour Act.

Defendants filed this Motion to Dismiss arguing that they never employed Plaintiff and did not sign or otherwise assent to the Agreement. Alternatively, they argue that the case should be transferred to the Charlotte Division because neither Defendant resides within the Asheville Division.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy

"because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. Motion to Dismiss

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Parker v. Glosson, 232, 641 S.E.2d 735, 737 (N.C. App. 2007) (internal quotations omitted). Formation of a valid contract requires "an agreement to which at least two parties manifest an intent to be bound." Id.

"The object of a signature to a contract is to show assent, but the signing of a written contract is not necessarily essential to its validity. Assent may be shown in other ways, such as acts or conduct or silence." Burden Pallet Co. v. Ryder Truck Rental, Inc., 271 S.E.2d 96, 97 (N.C. App. 1980); see also Fid. & Cas. Co. of N.Y. v. Charles W. Angle, Inc., 91 S.E.2d 575, 579 (N.C.

1956) (holding that an agreement not executed by plaintiff was enforceable and noting that a "signature is not always essential to the binding force of an agreement" and "mutuality or assent ... may be shown in other ways" such as whether it "is delivered and acted on"); W.B. Coppersmith & Sons, Inc. v. Aetna Ins. Co., 21 S.E.2d 838, 840 (N.C. 1942) ("The signing of a written contract is not necessarily essential to its validity. It is equally efficacious if a written contract is prepared by one party and delivered to the other party, and acquiesced in by the latter without objection."); Walker v. Goodson Farms, Inc., 369 S.E.2d 122, 127 (N.C. App. 1988) (holding that "the parties' failure to execute a written contract does not preclude the creation of an enforceable agreement").

In Irwin v. Federal Express Corp., 1:14-CV-557, 2016 WL 7053383 (M.D.N.C. Dec. 5, 2016), plaintiff signed a buyout/severance agreement that provided upon termination not for cause, he would continue working for a period of time and then receive a severance payment. Before the end of the agreed upon time, FedEx terminated plaintiff for alleged misconduct. He sued to enforce the agreement. FedEx moved for summary judgment on the grounds that it had not signed the agreement. The court denied the motion finding that

> FedEx gave signals to Irwin that it had "accepted" the Agreement through its communications. Because FedEx maintained possession of the Agreement, only it knew whether it had signed the Agreement. A jury could reasonably find that under these circumstances FedEx expressed its assent to the Agreement.

Irwin, 2016 WL 7053383 at *5.

Based upon that analysis, the Court finds that Plaintiff's Complaint has sufficiently alleged facts to show that the Agreement was a binding contract with Defendants. Plaintiff alleges that he and Defendants negotiated the Agreement and agreed upon all of its terms. He alleges that he signed the Agreement and returned it to Defendants. He alleges that he believed Defendants signed the Agreement but did not return a signed copy to him. He further alleges that after signing the Agreement, he went to work for Defendants and they observed all terms of the Agreement until

his termination. Plaintiff has alleged sufficient facts to state a breach of contract claim that is plausible on its face as required by Iqbal and Twombly. The Court also finds that Plaintiff has alleged sufficient facts to state a claim under the North Carolina Wage and Hour Act. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's Complaint be denied.

### B. Motion to Transfer

In the alternative, Defendants request that the Court transfer this case to the Charlotte Division. Defendants make a one paragraph argument that none of the alleged events occurred in the Asheville Division. They further allege that Defendant Eli Global LLC is located in Durham County and Defendant ECL Group LLC is located in Mecklenburg County within the Charlotte Division. Defendants cite no statutes, rules or case law supporting their argument. Defendants do not argue that venue is improper in the Asheville Division. In their Reply, Doc. 16, Defendants cite to the Court's Civil Case Opening Guide which states, "If the defendant(s) reside in, or if the action on which the lawsuit is based occurred in one of the counties listed in the following divisions below than [sic] the case should be filed in that divisional office."[1] Plaintiff argues that the forum selection clause in the Agreement provides that he could file suit in "any State or Federal court sitting in North Carolina" and therefore filing suit in the Asheville Division is proper.

Venue in Federal courts is generally governed by 28 U.S.C. § 1391. As noted by the Supreme Court:

> That provision states that "[e]xcept as otherwise provided by law ... this section *shall* govern the venue of *all civil* actions brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all

---

[1] The Guide is not a Court Order. It provides that "[t]his reference document describes the procedures for filing civil case initiating documents through ECF."

> defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b).

Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 56 (2013) (footnote omitted).

The statute does not speak in terms of divisions within a district, but rather requires that venue lie in the proper district. In 1988, Congress repealed the statute that previously established "divisional venue" in federal civil cases. 28 U.S.C. § 1393, repealed effective February 17, 1989 by Public Law 100–702. See Bishop v. C & P Trucking Co., Inc, 840 F.Supp. 118, 119 (N.D. Ala. 1993) (when 28 U.S.C. § 1393 was repealed, the concept of divisional venue disappeared); Jordon v. Bowman Apple Prod. Co., 728 F.Supp. 409, 419 (W.D. Va. 1990) ("At least one commentator has stated that 'there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district.'" (quoting C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, § 3809 (1989 Supp.)). However, courts hold that where divisional venue is mandated by a local rule it must be followed. Jordon, 728 F.Supp. at 419.

The Western District of North Carolina has not adopted any local rules regarding divisional venue. 28 U.S.C. § 1404 provides in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ...." 28 U.S.C. § 1404(a). 28 U.S.C. § 1406(a) also authorizes a transfer where the court finds venue to have been improperly laid. Defendants did not bring this Motion pursuant to 28 U.S.C. §§ 1404 or 1406(a) and the Court will not presume what arguments

they would make under those statutes. Therefore, the undersigned respectfully recommends that Defendants' Motion to transfer be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Rule 12(b)(6) Motion to Dismiss and Alternative Motion to Transfer Division," Doc. 10, be **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Martin Reidinger.

**SO RECOMMENDED.**

Signed: February 4, 2019

David S. Cayer
United States Magistrate Judge